UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

TAMI M. BISHOP, )
)
      PLAINTIFF, )
)
vs. ) CASE NO. 08-CV-736-FHM
)
MICHAEL J. ASTRUE, )
Commissioner of the )
Social Security Administration, )
)
      DEFENDANT. )

## OPINION AND ORDER

Plaintiff, Tami M. Bishop, seeks judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits.[1] In accordance with 28 U.S.C. § 636(c)(1) & (3) the parties have consented to proceed before a United States Magistrate Judge.

The role of the Court in reviewing the decision of the Commissioner under 42 U.S.C. §405(g) is limited to determining whether the decision is supported by substantial evidence and whether the decision contains a sufficient basis to determine that the Commissioner has applied the correct legal standards. *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Doyal v. Barnhart*, 331 F.3d 758 (10th Cir.

---

[1] Plaintiff's February 28, 2005 applications for Disability Insurance and Supplemental Security Income benefits were denied initially and upon reconsideration. Two hearings before an Administrative Law Judge (ALJ) were held, the first on February 27, 2007, the supplemental on September 4, 2007. By decision dated September 12, 2007, the ALJ entered the findings which are the subject of this appeal. The Appeals Council denied review of the findings of the ALJ on November 26, 2008. The action of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

2003). The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. *White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

Plaintiff was 48 years old at the time of the initial hearing. [R. 381]. She claims to have been unable to work since April 30, 2004, due to fibromyalgia, chronic fatigue syndrome, severe depression and anxiety, weakness and numbness in her right hand and constant pain all over, especially lower back, shoulder and neck pain. [R. 131; Plaintiff's Brief, Dkt. 17, p. 2]. The ALJ found that Plaintiff has severe impairments consisting of fibromyalgia, depressive disorder and anxiety disorder. [R. 18]. He determined that, despite these impairments, Plaintiff retains the residual functional capacity (RFC) to lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk 4 hours during an 8-hour workday; sit 8 hours; perform frequent reaching, handling, fingering, climbing, balancing, stooping, kneeling, crouching and crawling; with moderate limitations in abilities to work in coordination with others, accept instructions and criticism appropriately, get along with co-workers and respond appropriately to changes in the work setting. [R. 19-20]. Based upon the testimony of a vocational expert (VE), the ALJ found that Plaintiff's RFC did not preclude returning to her past sedentary work as a mortgage loan administrative assistant, credit reporter, secretary, medical secretary, receptionist, real estate assistant or receptionist. [R. 22]. The ALJ also found there are other jobs available in the economy in significant numbers that Plaintiff could perform with such an RFC. [R.23]. He concluded, therefore, that

2

Plaintiff is not disabled as defined by the Social Security Act. [R. 23-24]. The case was thus decided at step four, with an alternative step five finding, of the five-step evaluative sequence for determining whether a claimant is disabled. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005) (describing the five steps); *Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five steps in detail).

Plaintiff asserts the ALJ failed to properly consider her impairments stemming from her fibromyalgia. [Dkt. 17, p. 4]. Specifically, Plaintiff contends the ALJ was incorrect in giving more weight to the opinion of a one-time consultative [medical] examiner "over that of a practicing nurse, a medical practitioner with a more extensive relationship with [Plaintiff]." *Id.* For the reasons discussed below, the Court finds this case must be reversed and remanded to the Commissioner for reconsideration.

## Medical History

Because Plaintiff challenges only the ALJ's RFC findings that are related to her physical impairment, discussion by the Court of the medical evidence in this case is limited to those records.

Plaintiff has received general health care at the Claremore Indian Hospital as far back as April 8, 2002. [R. 254]. Fibromyalgia[2] was first diagnosed by Marjorie B. Butler, ARNP,[3] at the Claremore Indian Hospital on April 28, 2003. [R. 251]. Over the next

---

[2] Fibromyalgia is a common condition characterized by long-term, body-wide pain and tender points in joints, muscles, tendons and other soft tissues. Fibromyalgia has also been linked to fatigue, morning stiffness, sleep problems, headaches, numbness in hands and feet, depression and anxiety. *See* medical encyclopedia online: http://www.nlm.nih.gov/medlineplus/ency/article/000427.htm (Update Date: 2/22/2009).

[3] Advanced registered nurse practitioner (ARNP) is a registered nurse with prescriptive authority who is qualified to provide comprehensive health care and manage a broad range of health
(continued...)

year, Plaintiff was seen and treated at the Claremore Indian Hospital for menopausal symptoms, upper urinary tract infection, well-woman exams, smoking cessation, diarrhea, depression and symptoms related to Fibromyalgia. [R. 239-254].  In November 2004, Plaintiff was treated for GERD (gastroesophageal reflux disease), costochondritis (inflammation of a rib or the cartilage connecting a rib) and upper and middle back pain which she reported began after "painting overhead." [R. 236-237]. In December 2004, Plaintiff complained of muscle spasm in her back and numbness in her right hand, again reporting she had been painting a house a few weeks prior. [R. 234].  She claimed the numbness in her right hand had initially started about two years earlier when she had a ganglion cyst surgically removed. *Id.*  X-rays of both wrists were negative and Plaintiff was advised to use ice, a splint and over-the-counter pain and analgesic medication. *Id.*  Menopausal symptoms, sleep disturbance, fibromyalgia, carpal tunnel syndrome[4] and depression were diagnosed and treated in December 2004 and February 2005. [R. 227-230, 221-226].

On May 5, 2005, Plaintiff was examined by Paul Ott, D.O., at the Claremore Indian Hospital. [R. 217-218].  He filled out paperwork for the Cherokee Nation and reported Plaintiff was being treated for major depression, fibromyalgia and carpal tunnel

---

[3] (...continued)
services, including: promotion and maintenance of health; prevention of illness and disability; diagnosis and prescription of medications, treatments and devices for acute and chronic conditions and diseases; management of health care during acute and chronic phases of illness; guidance and counseling services; and consultation and/or collaboration with and referral to other health care providers and community resources. Oklahoma Nursing Practice Act, Title 59, Chapter 12, Section 567.3(a)(6); Oklahoma Administrative Code (OAC) Title 485:10-15-6.

[4] Carpal tunnel syndrome is pressure on the median nerve, the nerve in the wrist that supplies feeling and movement to parts of the hand. It can lead to numbness, tingling, weakness or muscle damage in the hands and fingers. *See* medical encyclopedia online: http://www.nlm.nih.gov/medlineplus/ency/article/000433.htm (Update Date: 10/10/2009).

syndrome. *Id.* Dr. Ott said Plaintiff "can do extra light housework" that pain with walking, low back, knee, ankle, and carpal tunnel "is not debilitating for simple movement" and "no strength atrophy noted." [R. 217]. Dr. Ott also filled out a Medical Examination Form which reflected diagnoses of fibromyalgia, right carpal tunnel syndrome and major depression. [R. 218]. He recommended treatment with "prescriptions and P.T." *Id.* To the questions: "Does this condition prevent the patient from working?" and "Could this condition be controlled by their medication?" he answered: "Yes." *Id.* To the questions: "Could this condition be caused by alcohol or drug abuse?" and "Is this patient able to work at this time?" he answered: "No." *Id.* He checked the box for "Light" to indicate the patient's current work tolerance. He recommended Plaintiff's next appointment in three months. *Id.*

On May 11, 2005, Plaintiff was seen for initial evaluation by a physical therapist. [R. 216]. Range of motion tests of the upper and lower extremities were within functional limits; lumbar flexion was at 50% positive for pain; lumbar extension was within functional limits; lumbar rotation was 30% to the left and right with some pain; SLR test was positive on the right; pain increased at right lower back and the degree of pain was rated at 8/10 (eight on a ten scale with ten being the worst). *Id.* Plaintiff had negative phalens and reverse phalens.[5] She had decreased cervical side-bending/rotation. Strength of bilateral lower extremities was within functional limits and her cervical strength was grossly graded at 5+/10. [R. 216]. Strengthening and stretching exercises were designed for treatment on a biweekly basis. *Id.* Goals were

---

[5] Phalens is a wrist-flexion test used in diagnosing carpel tunnel syndrome. *See* medical information online at: http://www.ninds.nih.gov/disorders/carpal_tunnel.htm (last updated 12-18-09).

set to decrease pain to 0-2/10 for improved activities of daily living and treatment with home exercise and management programs. *Id.*

On May 25, 2005, Plaintiff underwent a physical examination by Beau C. Jennings, D.O., who reported to the agency that there was no cervical adenopathy (disease or enlargement involving glandular tissue) or bruits (abnormal sounds). [R. 179]. With regard to Plaintiff's upper extremities, Dr. Jennings found: negative Tinel's sign; good grip strength; ability to manipulate small objects well; touch fingers to thumbs; there were no Heberden's nodes (small bony knobs associated with osteoarthritis); no clubbing; deep tendon reflexes were good; wrist pulses were good; all ranges of motion were full; and there was no joint redness, tenderness or swelling. *Id.* Examination of Plaintiff's lower extremities revealed: normal gait; legs measuring equally in length; ability to squat well; sitting and supine straight leg raising tests were negative; calves and thighs measured equally in circumference; there was no pretibial edema (swelling); her sensory examination was normal; pedal and posterior tibialis pulses were absent; there was no stasis dermatitis (rash); toe extensor strength was good; deep tendon reflexes were good; all ranges of motion were full and there was no joint redness, tenderness or swelling. *Id.* Dr. Jennings assessed fibromyalgia per history, carpal tunnel syndrome of the left wrist and chronic depression. *Id.*

Physical therapy treatment records reflect that Plaintiff was doing exercises and began a walking program during May and June 2005. [R. 212]. On July 28, 2005, Plaintiff reported she was doing exercises, that she had decreased walking because of the heat and that she experienced increased neck pain. *Id.* Her pain rating was 2/10.

*Id.* Plaintiff was discharged from physical therapy and instructed to continue with her home exercises. *Id.*

The record contains a July 29, 2005, handwritten note signed by Marjorie B. Butler, ARNP, stating: "Ms. Bishop is still incapacitated with fibromyalgia; major depression and carpal tunnel syndrome, and please continue her assistance." [R. 210]. Ms. Butler's treatment record from that date indicates Plaintiff had requested a note "stating unable to RTN to work." [R. 209]. Plaintiff reported her therapy "helped her a lot." *Id.* Her neck was positive for pain with manipulation in passive range of motion. *Id.* The treatment plan was to continue ongoing therapy for pain and depression, over-the-counter analgesics and prescriptions for Baclofen, Lortab and Amitriptylline.[6] [R. 209].

On October 24, 2005, Ms. Butler filled out and signed a "Medical Examination Form," the same form previously used by Dr. Ott. [R. 207, 217]. Ms. Butler listed diagnoses of carpal tunnel syndrome, fibromyalgia and depressive disorder. [R. 207]. Under "Recommendation for Treatment" Ms. Butler wrote: "physical therapy; mental health therapy; medications." *Id.* She answered "Yes" to the questions: "Does this condition prevent the patient from working?" and "Could this condition be controlled by their medication?" and added a handwritten note: "controled symptom control and ability to work are not synonymous" (sic). *Id.* She answered "No" to the questions: "Could this condition be caused by alcohol or drug abuse?" and "Is this patient able to work at

---

[6] Baclofen acts on spinal cord nerves and decreases the number and severity of muscle spasms and also relieves pain and improves muscle movement. *See* drug information online: http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682530.html (Last Reviewed - 09/01/2008). Lortab (hydrocodone bitartrate and acetaminophen) is a semisynthetic narcotic analgesic and antititussive indicated for relief of moderate to moderately severe pain. *Physicians' Desk Reference* (PDR) 53rd ed. 3162. Amitriptyline is an anti-depressant. http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682388.html (Last Revised - 05/01/2009).

7

this time?" Ms. Butler indicated: "None ← Light" for Plaintiff's current work tolerance and recommended Plaintiff's next appointment in three months. *Id.* A note dated January 19, 2006, signed by Ms. Butler says: "Tami Bishop is still fully disabled from employment of any kind due to carpal tunnel syndrome & fibromyalgia." [R. 205].

Ms. Butler completed another "Medical Examination Form" on April 19, 2006, which reflects diagnoses of fibromyalgia, carpal tunnel syndrome right hand and arm, major depression. [R. 204]. Her treatment recommendation was physical therapy, home exercise program and medications with counseling. *Id.* Her yes/no answers to the questions were unchanged. On the question: "If medically disabled, please give an approximate length of time the patient can return to work" Ms. Butler wrote: "indeterminate." *Id.* Ms. Butler indicated "light" for Plaintiff's current work tolerance and recommended the next appointment in three months. *Id.*

On November 3, 2006, Ms. Butler saw Plaintiff in an office visit for followup after Plaintiff's gallbladder surgery and diagnosed: major depression; fibromyalgia; GERD; chronic pain syndrome; ASA preventive; chronic fatigue of fibromyalgia and menopause. [R. 255-259]. Examination revealed no edema, no joint swelling, diffuse pain with palpation over pressure points on back. *Id.* Observations were: moves extremities well, speech normal, memory normal, gait normal; normal mood, flat affect, speech appropriate. *Id.* Plaintiff was given a B-12 injection and was provided refills of her medications. *Id.*

In February 2007, Plaintiff was hospitalized at Claremore Indian Hospital for acute appendicitis and underwent an appendectomy. [R. 291-298, 347-350].

On March 1, 2007, Ms. Butler completed a Residual Functional Capacity to Do Work Related Activities form. [R. 287-290]. Ms. Butler expressed the opinion that Plaintiff could: sit, stand and walk 10-30 minutes at one time; sit and stand a total of 1 hour during an 8-hour workday; walk 2 hours total during an 8-hour workday; lift up to 5 lbs. frequently, 6 to 10 lbs. occasionally and over 11 lbs. not at all. [R. 287]. She indicated Plaintiff could occasionally carry up to 5 lbs. *Id.* She opined Plaintiff's use of feet and hands for repetitive movements was limited; that she could bend, reach and handle occasionally but finger, squat, crawl and climb not at all. [R. 288]. She assessed moderate restrictions on exposure to marked changes in temperatures and humidity, vibrations and repetitive use of hands; and she assigned total restrictions against unprotected heights, being around moving machinery, exposure to dust, fumes and gases and driving. *Id.* Ms. Butler responded "No" to the question: "If your patient was allowed to perform a job with in the above parameters, would he/she be able to perform such work on a sustained and continuing basis (8 hours per day, 5 days per week)?" *Id.* She wrote:

> her fibromyalgia impairs her ability to do anything for more than about 20 minutes without needing to rest - which includes laying down - change position frequently for some relief. Her pain level is often severe which impairs her ability to learn a job and be able to perform it acceptably.

*Id.* Ms. Butler opined Plaintiff's impairments would interfere with her ability to engage in work that required a consistent pace of production (i.e., assembly line work) and that Plaintiff's concentration was impaired to a marked degree by pain or other impairments. [R. 289]. She believed Plaintiff will experience symptoms on a chronic basis from her underlying medical condition which would reasonably be expected to cause distraction

9

from job tasks or result in a failure to complete job tasks in a timely manner for a total of one or more hours during a typical eight (8) hour workday. She anticipated Plaintiff's impairments or treatment would cause her to be absent from work more than three times a month. *Id.* Ms. Butler answered "No" to the question: "Are the individual's medications such that they would interfere with his ability to concentrate or reason effectively?" *Id.* She wrote:

> the medication is mild and only partially effective in her symptom reduction. But not expected to impair her reasoning ability.

[R. 289]. Ms. Butler went on to say:

> Her next appointment with me is in May. Her last appointment was 11-03-06. Upon physical exam, [Plaintiff] was noted to have daily pain of moderate to severe degree that waxed/waned in her neck; shoulders; low back with pinpoint muscle soreness. These painful areas generate headaches and increase her major depression disorder. Her lab results are within normal limits. There are no boney defects on Xrays; which fibromyalgia does not alter Xray results. She has not been approved by contract health for EMG-muscle studies that we have requested due to limited funding.

[R. 290].

On March 27, 2007, Sri K. Reddy, M.D., examined Plaintiff on behalf of the Social Security Administration. [R. 299-311]. The medical records reviewed by Dr. Reddy were listed as left and right wrist x-rays on December 8, 2004. [R. 299]. The doctor quoted Plaintiff's complaints of pain in the low back, mid back, neck, both shoulders, both hips, knees and ankles, the severity of which was rated as 4 on a 0-10 scale. *Id.* Physical examination revealed grip strength of 15 on the right and 14 on the left. [R. 300]. During the neurologic examination, Dr. Reddy found good strength in

10

Plaintiff's upper and lower extremities, equal on both sides, and equal and symmetric reflexes in both upper and lower extremities. *Id.*  The musculoskeletal examination showed functional range of motion. *Id.*  Range of motion charts accompanying Dr. Reddy's report reveal normal results and the hand/wrist sheet shows full range of motion. [R. 301-303].  The lumbosacral and cervical spine "backsheet" attached to Dr. Reddy's report reflects full range of motion with positive pain results, tenderness and muscle spasm. [R. 304].

Dr. Reddy completed an RFC form indicating Plaintiff could: lift and carry up to 20 lbs. occasionally;  sit 8 hours at one time; stand 2 to 4 hours at a time for a total of 4 hours in an 8-hour work day; and walk 2 hours at a time for a total of 4 hours in an 8-hour work day. [R. 305-306].  He identified as findings: "Tender spots on the c-spine, low back, bilateral hips, bilateral scapula." [R. 306].  Dr. Reddy determined Plaintiff could perform reaching, handling, fingering, feeling and push/pull activities frequently and that she could operate foot controls frequently. [R. 307].  He found Plaintiff could frequently climb stairs and ramps, climb ladders or scaffolds, balance, stoop, kneel, crouch and crawl. [R. 308]. He restricted Plaintiff's exposure to unprotected heights and vibrations due to carpal tunnel syndrome on the right to occasional. [R. 309].  He concluded Plaintiff could frequently tolerate exposure to: moving mechanical parts; operating a motor vehicle; humidity and wetness; dust, odors, fumes and pulmonary irritants; and extreme cold and heat; and that she could tolerate loud (heavy traffic) noise. *Id.*  He placed no restrictions on Plaintiff's ability to perform activities like shopping, travel without a companion for assistance, ambulate without using a wheelchair, walker or canes; walk a block at a reasonable pace on rough or uneven

surfaces; use standard public transportation; climb a few steps at a reasonable pace with use of a single hand rail; prepare a simple meal and feed herself; care for personal hygiene; and sort, handle and use paper/files. [R. 310].

## The ALJ's Decision

The ALJ found Plaintiff has severe impairments of fibromyalgia, depressive disorder and anxiety disorder. [R. 18]. He evaluated Plaintiff's fibromyalgia under Listing 14.09 for inflammatory arthritis and her mental impairment under Listing 12.04 for affective disorders and concluded Plaintiff did not meet the criteria of either listing. [R. 18-19]. He found Plaintiff had an RFC to lift/carry 20 pounds occasionally and 10 pounds frequently; that she could stand/walk for 4 hours during an 8-hour workday and sit for 8 hours. [R. 19]. He limited Plaintiff's reaching, handling, fingering, climbing, balancing, stooping, kneeling, crouching and crawling to frequent. *Id.* He assigned moderate limitations in her ability to work in coordination with others, accept instructions and criticism appropriately, get along with co-workers and respond appropriately to changes in the work setting. [R. 19-20].

The ALJ noted the December 8, 2004 medical evidence from Claremore Indian Hospital showing muscle spasm in the back, pain in the right hand and use of an ice pack and over-the-counter drugs "to relieve pressure." [R. 21]. He then cited the initial evaluation performed by the physical therapist at Claremore Indian Hospital on May 11, 2005, and said: "Ms. Bishop also engaged in physical therapy and, in May 2005, she reported a reduction of her pain level to 2/10 and improvement in her activities of daily living." [R. 21]. He also noted Plaintiff's diagnosis of major depressive disorder at Claremore Indian Hospital on June 23, 2006. *Id.*

12

After the ALJ described the findings of John W. Hickman, Ph.D., the agency's mental consultative physician, he acknowledged Ms. Butler's and Dr. Reddy's RFC findings, characterizing the latter as "a much more liberal interpretation" of Plaintiff's capacities. [R. 21-22]. He found "little or no support for the conclusions" of Ms. Butler, saying: "Neither the remainder of the medical record nor Ms. Bishop's testimony points to Ms. Butler's limitation of the claimant to just 1 hour of sitting or standing." [R. 22].

The ALJ found Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible. [R. 22]. As support for this finding, he cited what he thought was Plaintiff's statement to the physical therapist in May 2005 that her pain level had improved to 2/10 and that she discerned an improvement in her activities of daily living. [R. 22]. He also relied upon Dr. Reddy's March 27, 2007 report that Plaintiff rated her pain level "at just 4/10;" that she had full range of motion in her back, neck and all joints including wrists and thumbs; that she was capable of manipulating small objects and grasping tools; that she could sit for an entire 8-hour workday and that she could stand and/or walk for half the workday. *Id.*

The ALJ adopted Dr. Hickman's mental RFC findings, specifically noting his opinion that secondary gain value is an integral part of Plaintiff's perception of her pain and her allegations of disability. [R. 22].

Based upon these findings, the ALJ determined Plaintiff was able to perform her past work and that there are other jobs in the economy that she could perform with her RFC. [R. 22-23].

## Discussion

Plaintiff asserts the ALJ failed to properly consider the impairments stemming from her fibromyalgia. [Dkt. 17, p. 4]. Specifically, Plaintiff contends the ALJ erred by giving more weight to the opinion of Dr. Reddy, a one-time consultative examiner, than he gave to the opinion of Ms. Butler. [Dkt. 17, p. 4]. She argues Ms. Butler's findings and opinions "should trump" Dr. Reddy's findings and opinions because Ms. Butler has a more extensive relationship with Plaintiff and can provide a more complete longitudinal picture of her impairments which the nature of fibromyalgia "demands." [Dkt. 17, p. 6]. She cites *Frantz v. Astrue*, 509 F.3d 1299 (10th Cir. 2007); 20 C.F.R. § 404.1527(d) and Soc.Sec.Ruling (SSR) 06-03p, WL 2329939, as support for this proposition.

Counsel for the Commissioner responds that Ms. Butler was not a "treating source" and that the factors set forth in 20 C.F.R. § 404.1527(d)[7] and 416.927(d) "explicitly apply only to evaluating medical opinions from 'acceptable medical sources.'" [Dkt. 18, p. 6]. Counsel further argues that, even assuming the ALJ was required to consider the 404.1527(d) factors, he did not incorporate Ms. Butler's "rather extreme opinions" into his RFC assessment because "they were unsupported, and, in fact, were inconsistent with other medical records." *Id.* at 5.

That the ALJ was required to at least consider Nurse Butler's opinion is not disputed in this case. *See Frantz*, 609 F.3d at 1301 (Nurse practitioners are included

---

[7] 20 C.F.R. § 404.1527(d): Regardless of its source, [the agency] will evaluate every medical opinion [it] receives. The agency considers all of the following factors in deciding the weight to be given any medical opinion: 1) examining relationship; 2) treatment relationship; 3) supportability; 4) consistency; 5) specialization; 6) other factors which tend to support or contradict the opinion.

in the category of other medical sources in the regulations) (citing 20 C.F.R. § 404.1513 (d)(1)).  "These sources ... may provide evidence "to show the severity of a claimant's impairment(s) and how it affects a claimant's ability to work." *Id.*  It is clear from the ALJ's decision, and the parties agree, that the ALJ did consider Ms. Butler's opinion. [R. 21-22].

The Dispute in this case centers on the ALJ's failure to give controlling weight to Ms. Butler's opinion.  As to the Commissioner's argument that the ALJ was not required to attribute to Ms. Butler's opinion the weight normally given to treating physicians' opinions because Ms. Butler was not an acceptable medical source as defined by 20 C.F.R. §§ 404.1502 and 416.902, the Court notes that the ALJ did not suggest that Ms. Butler's opinion was rejected on such grounds.  As acknowledged by counsel for the Commissioner, the ALJ "expressed no concern regarding Nurse Butler's treatment relationship with Plaintiff." [Dkt. 18, p. 7].  The reason the ALJ gave for disregarding Ms. Butler's opinion was that he found "little or no support" in the record for her conclusions regarding Plaintiff's capacities. [R. 22].  Therefore, the question of whether the ALJ was required to treat an opinion from a "medical source" who is not an "acceptable medical source"  as an opinion from a "treating source" and give it more weight than the opinion of the consultative medical source need not be resolved by this Court in this case. *See* SSR 06-3p at *2; *Bowman v. Astrue*, 511 F.3d 1270, 1275 (10th Cir. 2008) (an opinion from a medical source who is not an "acceptable medical source" may outweigh the opinion of an "acceptable medical source" under certain circumstances, i.e., if he or she has seen the individual more often than the treating source, has provided better supporting evidence and a better explanation for his or her opinion).

After review of the record, the Court concludes the ALJ did not properly review all the medical evidence and remands the case on that basis. It is the ALJ who is charged with determining a claimant's RFC from the evidence. *Howard v. Barnhart*, 379 F.3d 945 (10th Cir. 2004) (The determination of RFC is an administrative assessment, based upon all of the evidence of how the claimant's impairments and related symptoms affect her ability to perform work related activities). However, in assessing the claimant's RFC, the ALJ must evaluate the medical record and support his conclusions concerning the RFC by affirmatively linking those conclusions to evidence in the record. *Id.* at 949.

In this case, the RFC form completed by Ms. Butler is not the only evidence from Ms. Butler's treatment records that the ALJ disregarded. Ms. Butler diagnosed Plaintiff's fibromyalgia in April 2003 and she saw Plaintiff regularly over the ensuing four years. During that period of time, Ms. Butler recorded consistent complaints of fibromyalgia-related pain and spasm. She prescribed medication and she expressed an opinion that Plaintiff was unable to work no less than three times. The ALJ did not discuss this evidence. Moreover, although he apparently accepted Ms. Butler's diagnosis of fibromyalgia, the ALJ did not describe what evidence was required, and that he determined was missing from the record, that would support her opinion regarding the limitations imposed by fibromyalgia. The only limitations assessed by Ms. Butler to which the ALJ referred directly were for sitting and standing. He did not address any of the other limitations identified by Ms. Butler, including walking, lifting and repetitive use of hands and feet. Upon remand, the ALJ should demonstrate that he has considered all of the evidence by "discussing the evidence supporting his decision,

... the uncontroverted evidence he chooses not to rely upon, [and] significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir.1996) (Unless an ALJ explicitly weighs all of the significantly probative evidence in a case, [the court] cannot assess whether his decision was supported by substantial evidence as required); *see also* 42 U.S.C. § 405(b)(1).

In addition, the record contains evidence from an "acceptable medical source" that provides support for Ms. Butler's opinion and is contrary to the ALJ's determination which he did not address. Paul D. Ott, D.O., is an acceptable medical source under the regulations. *See* 20 C.F.R. § 404.1513(a)(1). It was he who prescribed physical therapy for Plaintiff when he examined her on May 5, 2005, at the Claremore Indian Hospital. [R. 217]. He also expressed the opinion that Plaintiff was unable to work. [R. 217-218]. The ALJ did not acknowledge Dr. Ott's examination notes or his opinion. Because the Court may not compensate for deficiencies in the decision or make factual findings on behalf of the ALJ, the Commissioner must reconsider his determination in light of this evidence. *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (The court may not create post-hoc rationalizations to explain the treatment of evidence when that treatment is not apparent from the decision itself); *Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001) (court is not in position to draw factual conclusions on behalf of the ALJ).

The ALJ relied heavily upon a note recorded by a physical therapist in May 2005 as evidence that Plaintiff's pain level was reduced and her activities of daily living (ADLs) were improved. [R. 21 (citing Exhibit 6F, p. 15)]. Review of this page from Plaintiff's treatment record reveals that the notation was made during an **initial**

**evaluation** on May 11, 2005, where reduction of pain to 0-2 on a 10 scale and improvement of ADLs were set as treatment goals for physical therapy, and was not intended as an assessment of Plaintiff's current condition. [R. 216]. Rather, the degree of Plaintiff's pain on that date was rated at 8/10. *Id.* The record does indicate that Plaintiff reported improvement to a pain rating of 2/10 two months later than the ALJ surmised but there is no indication that Plaintiff's pain and ADLs improved to the extent that she was able to engage in work activities. [R. 212]. The Court notes that this discrepancy alone might not warrant reversal were it not for the existence of the other probative medical evidence in the record that is inconsistent with the ALJ's findings and that was not addressed by the ALJ.

The Court further notes that the ALJ appears to have dismissed carpel tunnel syndrome as a severe impairment affecting Plaintiff's ability to use her hands for repetitive movement. In doing so, he ignored medical evidence that carpal tunnel syndrome had been diagnosed by Dr. Ott, Dr. Jennings, Ms. Butler and Dr. Reddy. [R. 217-218, 179, 207, 204, 221, 290, 309]. There is some evidence in the reports by the agency examining physicians that shows full range of motion and negative Tinel's sign[8] as well as the physical therapist's findings of negative phalens on initial evaluation. However, the ALJ did not address this competing evidence or explain his reason for discounting carpal tunnel syndrome as a severe impairment. *See Kemp v. Bowen*, 816 F.2d 1469, 1476 (10th Cir.1987) (noting it is fact finder's responsibility to resolve

---

[8] A tingling sensation felt in the distal portion of a limb upon percussion of the skin over a regenerating nerve in the limb. *See* medical dictionary online at: http://www2.merriam-webster.com/cgi-bin/mwmednlm?book&Medical&va&Tinel.

genuine conflicts between contrary evidence); *Salazar v. Barnhart*, 468 F.3d 615, 622 (10th Cir. 2006). Upon remand, the ALJ should address the medical evidence and Plaintiff's claim of limitations caused by carpal tunnel syndrome and articulate his findings regarding the existence and/or the severity of such an impairment. ("[A]n ALJ is required to consider all of the claimant's medically determinable impairments, singly and in combination; the statute and regulations require nothing less" and a failure to do so "is reversible error."). *Id.* at 621.

## **Conclusion**

The Commissioner's finding that Plaintiff not disabled is REVERSED and REMANDED for reconsideration.

SO ORDERED this 16th day of March, 2010.

_____
FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE